UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANIEL TREVINO,

          Petitioner,

vs.                           Case No. 2:06-cv-41-FtM-29DNF

WALTER A. McNEIL, Secretary, Florida
Department of Corrections,

          Respondent.[1]

_____

## OPINION AND ORDER

### I. Status

Petitioner, Daniel Trevino, (hereinafter "Petitioner" or "Trevino"), initiated this action by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to 28 U.S.C. § 2254 on January 12, 2006.[2] Trevino challenges his state court judgment of conviction for First Degree Murder entered in the Twentieth Judicial Circuit Court, Collier County, Florida, for which he was sentenced to life imprisonment without the possibility

_____

[1]Walter A. McNeil, the current Secretary of the Florida Department of Corrections is substituted as the proper party Respondent for James R. McDonough, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2]The Petition (Doc. #1) was docketed and filed in this Court on January 19, 2006; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

of parole.  Petition at 1.[3]  The Petition raises the following four

grounds for relief:

### Ground One

**Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment when defense counsel rested without consulting Trevino regarding whether Trevino wanted to testify.**

### Ground Two

**Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment when defense counsel failed to have Trevino's key chain analyzed for fingerprints, failed to have blood evidence from the victim, victim's car, and Trevino's car analyzed for exculpatory DNA evidence.**

### Ground Three

**The trial court's exclusion of death-scrupled jurors violated Trevino's Sixth and Fourteenth Amendment Rights.**

### Ground Four

**The prosecutor's comments on Trevino's Fifth Amendment right to remain silent and shifting of the burden of proof to the defense violated Trevino's Sixth and Fourteenth Amendment rights.**

Id. at 5-13.    In accordance with the Court's Order to Show Cause

(Doc. #8) and after granting Respondent an extension of time (Doc.

#9), Respondent filed a Limited Response to the Petition (Doc. #11,

Limited Response).  Respondent submits that the Petition is timely

filed.  Limited Response at 11.  Thereafter, Respondent requested

and was granted an extension of time to file a Supplemental

---

[3]Unless specified otherwise, all page numbers referenced herein are to the page of the identified document as it appears on the Court's case management electronic computer filing system.

Response to the Petition to address each of the grounds identified in the Petition (Docs. #11 and #13). On September 25, 2006, Respondent filed a Supplemental Response to the Petition (Doc. #16, Supp. Response). Respondent filed a Notice of Filing Exhibits (Doc. #18), which identified exhibits that were filed in paper format in support of the Supplemental Response. These exhibits include, *inter alia*, a copy of the record on appeal, which includes the trial transcript and transcript from postconviction proceedings (Exhs. 1-25). Petitioner, after being granted an extension of time (Doc. #20), filed a Reply to the Supplemental Response (Doc. #21, Reply).

Thereafter, as permitted by the Court in its December 5, 2007 Order (Doc. #29), Petitioner filed an Amendment to the Petition (Doc. #30, Amended Petition) identifying the following additional ground for relief:

### Ground Five

**Petitioner contends fundamental error under both Federal and State Constitutions, (USCA Fifth Amendment), that uncharged crimes/ multiples basis instructions under general verdict was of a fatally destructive design, because first and third degree felony murder nor their underlying felonies in support thereof (robbery or sale of controlled substance), were not charged offenses brought to trial against Petitioner. Only offense of murder by a premeditated design was charged, thus jury's verdict must be set aside, where it is impossible to determine if inadequate theory was used to convict the Petitioner.**

Amended Petition at 2. Respondent filed a Response to the Amendment (Doc. #31) contending that the new ground alleging

instructional error is time barred, unexhausted and procedurally barred.  See generally Response to Amendment.  On March 17, 2008, Petitioner filed a Motion requesting an expansion to the record (Doc. # 32, Motion for Record Expansion) in connection with his new Ground Five.  Respondent filed a Response in Opposition to the Motion (Doc. #34).  Petitioner requested, and was granted, leave to file a Reply to Respondent's Response in Opposition to Motion, which he filed on June 19, 2008 (Doc. #37).  On October 7, 2008, the Court deferred ruling on Petition's Motion for Record Expansion (Doc. #38), until such time as the Court reviews the record and determines whether Ground Five is untimely; and, thus barred for review by the federal limitations period.  This case is ripe for review.

## II. Procedural History

On May 2, 1996, Trevino was arrested on a warrant charging him with Accessory After the Fact to the charge of First Degree Murder. On July 18, 1996, Trevino was also indicted for the offense of First Degree Murder.  The jury returned a verdict of not guilty as to the Accessory After the Fact charge, but found Trevino guilty of First Degree Murder of Michael Lovatt (case number 96-1321).  On October 20, 1997, Petitioner was sentenced to life in prison in accordance with the verdict.  Petitioner filed a timely direct appeal identifying the following issues for review:

> Point One: The trial court erred by excusing for cause a number of death-scrupled jurors in a case where death was not a possible penalty; and

> Point Two: The trial court erred by failing to grant appellant's motion for mistrial after the prosecutor commented on the appellant's right to remain silent and shifted the burdens of going forward and of proof during closing argument.

Exh. 2 at 2. The State filed a Reply Brief (Doc. #3). On February 24, 1999, the appellate court *per curiam* affirmed, without written opinion, Petitioner's conviction and sentence. Exh. 4; <u>Trevino v. State</u>, 731 So. 2d 669 (Fla. 2d DCA 1999). On December 29, 1999, Petitioner filed a *pro se* Rule 3.850 motion raising eleven grounds of ineffective assistance of counsel. Exh. 6 at 002-029. On February 24, 2000, the post-conviction trial court directed the State to respond to only the following issue, which Trevino raised as ground four in his Rule 3.850 motion:

> Whether defense attorney was ineffective by not allowing [Trevino] to testify to the fact that [Trevino] had been framed by his cousin Beto Trevino because they would lose the final opportunity to speak to the jury during closing.

<u>Id.</u> at 29. On April 7, 2000, the State requested an evidentiary hearing on the issue, finding no record evidence to refute the claim. <u>Id.</u> at 67. On December 13, 2001, Trevino filed a "Notice of Supplemental Authority DNA Testing Results that Prove Defendant's Blood Sample can be Excluded as a Contributor" attaching a "Forensic Case Report" dated August 29, 2001, prepared by The Bode Technology Group, Inc. <u>Id.</u> at 72-78. Represented by counsel, Trevino moved to amend his Rule 3.850 motion to include the following the three proposed additional grounds, which Trevino contended constituted newly discovered evidence:

### ground twelve

Where evidence of the murder suggested that the victim had struggled with his assailant and there existed extensive "defensive wounds" present on the victim's hands, arms and fingers, DNA evidence of material recovered and analyzed from fingernail clippings of the victim's left hand which scientifically excluded Trevino from being a contributor, constitutes newly discovered evidence which would mandate the trial court in finding that such evidence may probably produce an acquittal on retrial.

### ground thirteen

Arguing in the alternative, Trevino's trial counsel provided ineffective assistance of counsel in that he did not make any attempts to have the blood evidence from the victim, the victim's car, and Trevino's car analyzed for exculpatory DNA evidence when he knew that Trevino's cousin had been arrested for the murder and there was evidence that Beto had returned home a few days after the murder with noticeable injuries, coupled with the corroborative clues found at the crime scene that a struggle had ensued and that the victim had put up a struggle, as evidenced by his defensive wounds.

### ground fourteen

Agents for the Collier County Sheriff committed police misconduct which violated Trevino's constitutional due process rights and statutorily guaranteed rights when they released the bloodstained shirt worn by the victim at the time of the murder to his wife, thereby precluding Trevino from asserting his right to examine such evidence for exculpatory value as part of his collateral attack on his sentence.

Id. at 093, 096, and 100. As directed by the court, the State filed a Response to Grounds 9, 12, 13, and 14 of [Trevino's] Amended 3.850 Motion with exhibits in support thereof. Id. at 120-163. On November 25, 2002, the postconviction court denied grounds twelve and fourteen, and granted Petitioner an evidentiary hearing on grounds nine and thirteen. Id. at 164. On February 27, 2003,

the postconviction court held an evidentiary hearing in connection with grounds four, nine and thirteen at which Petitioner was represented by counsel.  On April 21, 2003, the court entered an order denying grounds six, seven, eight, ten and eleven as "facially insufficient" and denied relief on grounds one, two, three, four, five, nine and thirteen.  Id. at 167-176.  The court attached to its order copies of relevant pages from the August 28 and 29, 1997 proceedings before the trial court.  Id. at 178-204. Petitioner filed a *pro se* notice of appeal.  Id. at 205-209. Petitioner filed a *pro se* initial brief, the State file an answer brief, and Petitioner filed a reply brief.  Exhs. 7-9.  On January 9, 2004, the appellate court *per curiam* affirmed, without written opinion, the trial court's denial of postconviction relief.  Exh. 14; Trevino v. State, 872 So. 2d 910 (Fla. 2d DCA 2004). Petitioner's motion for rehearing was denied, and mandate issued on April 19, 2004.  Exh. 14.

On March 2, 2004, Petitioner filed a Rule 3.800 motion to correct illegal sentence, which he subsequently amended.  Exhs. 15-16.  The State filed a response to the Rule 3.800 motion and Petitioner filed a traverse in response.  Exhs. 17-18.  On March 7, 2005, the postconviction court denied Petitioner's Rule 3.800 motion finding "there is nothing facially or unconstitutionally illegal about the Defendant's life sentence imposed after conviction for first degree murder."  Exh. 19.  The appellate court affirmed without written opinion the trial court's order denying

Petitioner's Rule 3.800 motion.  Exh. 22.  Petitioner's motion for rehearing was denied.  Exh. 24.  Mandate issued on October 11, 2005.  Exh. 24.

### III.  Applicable § 2254 Law

Trevino filed his Petition and Amendment to Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Consequently, post-AEDPA law governs this action.  Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.'  Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)."  Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).  See also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11th Cir. 2003).  AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  Prior to the Court reviewing a claim on the merits, certain  aspects of the AEDPA, are relevant to this matter.

### A.  Federal Question

A federal court may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States."

28 U.S.C. § 2254(a). Questions of state law are generally insufficient to warrant review or relief by a federal court under § 2254. Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000). Questions of state law are only reviewed to determine whether the alleged errors rendered "the entire trial fundamentally unfair." Carrizales, 699 F.2d at 1055.

**B.   Exhaustion**

If a ground asserted by a petitioner warrants review by a federal court under § 2254, the petitioner must have first afforded the state courts an initial opportunity to address any federal issues. 28 U.S.C. § 2254(b)(1)(A). This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts. Rhines v. Weber, 544 U.S. 269, 274 (2005). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)("exhaustion of state remedies requires that petitioners

'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

A petitioner must present the <u>same</u> claim to the state court that he now requests the federal court to consider. <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)(citations omitted); <u>Kelly v. Sec'y for the Dep't of Corr.</u>, 377 F. 3d 1317, 1343-44 (11th Cir. 2004). Thus, the exhaustion requirement is not satisfied if the claims raised before the state court were not raised in terms of federal law. <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996); <u>Jimenez v. Fla. Dep't of Corr.</u>, 481 F.3d 1337, 1342 (11th Cir. 2007). With regard to claims of ineffectiveness of trial counsel, a petitioner must have presented those claims to the state court "'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'" <u>Ogle v. Johnson</u>, 488 F. 3d 1364, 1368 (11th Cir. 2007)(<u>citing McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)).

If a petitioner fails to exhaust a claim, the court may dismiss the petition without prejudice to permit exhaustion, if appropriate. <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004); <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982). Alternatively, the court has the discretion to grant "a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." <u>Ogle</u>, 488 F.3d at 1370 (citations omitted).

**C.   Procedural Default**

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." Henderson, 353 F.3d at 891 (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)). A procedural default may also result from non-compliance with state procedural requirements. See Coleman v. Thompson, 501 U.S. 722, 729-30, reh'g denied, 501 U.S. 1277 (1991).

> Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule. Wainwright v. Sykes, 433 U.S. 72, 85-86, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). When a state court correctly applies a procedural default principle of state law, federal courts must abide by the state court decision, Harmon v. Barton, 894 F.2d 1268, 1270 (11th Cir. 1990), but only if the state procedural rule is regularly followed, Ford v. Georgia, 498 U.S. 411, 424, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991). . .

Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), cert. denied, 127 S. Ct. 1823 (2007); see also Baldwin v. Johnson, 152 F.3d 1304, 1317 (11th Cir. 1998) (finding that federal courts may not review a claim that a petitioner procedurally defaulted under state law if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for

denying relief), <u>cert. denied</u>, 526 U.S. 1047 (1999).  This is true where the appellate court silently affirms the lower court procedural bar since federal courts should not presume an appellate state court would ignore its own procedural rules in summarily denying applications for postconviction relief.  <u>Tower v. Phillips</u>, 7 F.3d 206, 211 (11th Cir. 1993).

A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.  First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.  <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006); <u>Mize</u>, 532 F.3d at 1190.  "Cause" ordinarily requires a petitioner to demonstrate "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  <u>Henderson v. Campbell</u>, 353 F.3d 880, 892 (11th Cir. 2003) (quoting <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999)).  Constitutionally ineffective assistance of counsel can constitute cause if that claim is not itself procedurally defaulted.  <u>Edwards v. Carpenter</u>, 529 U.S. 446, 451-52 (2000).  To show "prejudice," a petitioner must demonstrate that there is "at least a reasonable probability that the result of the proceeding would have been different."  <u>Henderson</u>, 353 F.3d at 892.

Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim,

even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." Henderson, 353 F.3d at 892. See also House, 547 U.S. at 536-37 (prisoner asserting actual innocence must establish that, "in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt") (citation omitted).

D.  **Deference to State Decision**

Where a petitioner's claim raises a federal question, was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See, e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state

court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, ___ , 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown, 544 U.S. at 141;

Mitchell, 540 U.S. at 15-16.  Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them."  Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520).  The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18.  Depending upon the legal principle at issue, there can be a range of reasonable applications.  Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004).  Thus, the state court's decision is not subject to federal review de novo; rather, § 2254(d)(1) relief is only available upon a showing that the state

court decision meets the "objectively unreasonable" standard. <u>Id.</u> at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Dretke</u>, 545 U.S. 231, 240 (2005); <u>Henderson</u>, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." <u>Parker v. Head</u>, 244 F.3d 831, 836 (11th Cir.), <u>cert. denied</u>, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed <em>de novo</em>. <u>Rolling v. Crosby</u>, 438 F.3d 1296, 1299 (11th Cir.), <u>cert. denied sub nom. Rolling v. McDonough</u>, 126 S. Ct. 2943 (2006).

Finally, if the state court fails or declines to rule on the merits of a particular claim raised before it, that claim falls outside of the scope of § 2254(d)(1)'s restrictions and the

reviewing federal habeas court owes no deference to the state court decision when evaluating that claim. <u>Davis v. Sec'y Dep't of Corr.</u>, 341 F.3d 1310, 1313 (11th Cir. 2003).

### E. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d). <u>Newland v. Hall</u>, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case. <u>Newland</u>, 527 F.3d at 1184. In <u>Strickland</u>, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688. Petitioner bears a heavy burden to "prove, by a preponderance of the evidence, that

counsel's performance was unreasonable." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006). A Court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. Id. A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. An attorney is not ineffective for failing to raise or preserve a meritless issue. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

### IV. Findings of Fact and Conclusions of Law

**Amendment to the Petition**

Respondent concedes that the Petition was timely filed, but contests the timeliness of the Amendment to the Petition. Response

in Opposition to Amendment at 3. Consequently, the Court first addresses the issue of timeliness as it relates to the Amendment to the Petition.

The statute of limitations that governs the filing of Petitioner's Petition and Amended Petition is set forth at 28 U.S.C. § 2244(d) and provides as follows:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). Here, Petitioner's state conviction was final on May 26, 1999 (ninety days after entry of the judgment). <u>See</u> Rules of the Supreme Court of the United States, Rule 13.3.[4] Therefore, Petitioner had one year from the date his conviction became final to file a federal habeas petition, or until May 27, 2000, unless Petitioner availed himself of one of the statutory provisions which extends or tolls the time period. 28 U.S.C. § 2244(d)(2). A total of 216 days elapsed until Petitioner filed his Rule 3.850 motion on December 29, 1999, which tolled the running of the federal limitations period until mandate issued on April 19, 2004. By then, Petitioner had filed a Rule 3.800 motion dated March 2, 2004, which was still pending when mandate issued. By order dated May 4, 2004, the Rule 3.800 motion was denied. The appellate court affirmed the denial of Petitioner's Rule 3.800 motion, and mandate issued on October 11, 2005, restarting the federal limitations period. Consequently, the federal limitations period ran for an additional 92 days, until January 12, 2006, when Petitioner filed the instant Petition in this case. The Petition filed in this Court on August 12, 2003, was timely filed by 57 days. However, the Amendment to the Petition filed on April 23, 2007, was filed well after the federal limitations period expired

---

[4] United States Supreme Court Rule 13.3 states, in pertinent part, that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate[.]" <u>See also</u> <u>Chafers v. Sec'y, Fla. Dep't of Corr.</u>, 468 F.3d 1273, 1275 (11th Cir. 2006).

and is untimely, since the filing of a federal petition does not toll the one-year limitation period. <u>Duncan v. Walker</u>, 533 U.S. 167, 172 (2001). Thus, the filing of the Petition in this action did not stop the federal limitations period from running.

The Court does not find any justifiable reason to apply the doctrine of equitable tolling to the Amendment to the Petition. Equitable tolling is appropriate only where a petitioner establishes both extraordinary circumstances that are both beyond his control and due diligence. <u>Diaz v. Sec'y for Dept. of Corr.</u>, 362 F.3d 698, 702 (11th Cir. 2004). Here, Petitioner fails to demonstrate due diligence or explain why Ground Five was not raised in his initial Petition. Consequently, Ground Five can only be deemed timely if it relates back to the claims raised in the original Petition.[5] Fed. R. Civ. P. 15(c). Respondent submits that this new ground for relief does not relate back to the other grounds for relief identified in the Petition. Response in Opposition to Amendment at 4. Petitioner asserts that Rule 15(c)(2) should <u>not</u> be construed "narrowly" and, because the claim

---

[5]Habeas Corpus Rule 11 permits application of the Federal Rules of Civil Procedure to habeas proceedings "to the extent that the are not inconsistent with any statutory provisions or [the habeas] rules." <u>See also</u> Fed. R. Civ. P. 81(a)(4). Habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. The Court, in its Order permitting Petitioner to file his Amendment to Petition, expressly stated that "[t]he Court's acceptance of the filing of the Amendment should not be implied as a waiver of Fed. R. Civ. P. Rule 15(c) or of the one-year federal statute of limitations set forth in 28 U.S.C. § 2242(d)." December 5, 2007, Order of Court at 1 (Doc. #29).

arose out of case number 96-1321 CFA the claim does relate back to the Petition.  Reply in Opposition to Respondent's Response to Amend Petition for Writ of Habeas Corpus (Doc. #27) at 2).

Petitioner misinterprets the relation back doctrine.  In pertinent part, Fed. R. Civ. P. 15(c)(2) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading."  The terms  conduct, transaction,  or  occurrence  <u>are</u>  <u>not</u>  <u>synonymous</u>  <u>with</u>  <u>trial</u>, conviction, or sentence.  <u>See</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 664, (2005)(emphasis added).  In other words, the fact that a claim relates back to a petitioner's trial, conviction, or sentence, is not determinative of whether the relation back doctrine is satisfied.  <u>Davenport v. U.S.</u>, 217 F.3d 1341, 1344 (11th Cir. 2000).  Rather, the test for determining whether a new claim relates back to the original claim is whether the claims "are tied to a common core of operative facts." <u>Mayle v. Felix</u>, 545 U.S. at 664.  This is consistent with the factual specificity requirement set forh in Habeas Corpus Rule 2(c), which apprises petitioners that "[t]he petition must . . . specify all the grounds for relief . . . [and] state the facts supporting each ground." <u>See</u> <u>also</u> <u>Mayle</u> at 661.  Thus, relation back is only appropriate "when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events

separate in 'both time and type' from the originally raised episodes." Id. at 658 (quoting U.S. V. Craycraft, 167 F.3d 451, 457 (8th Cir. 1999); accord Davenport v. U.S., 217 F.3d at 1344 (rejecting a generalized application of the relation back doctrine and expressly adopting the factually specific test set forth in Craycraft, Id.)). Rule 15(c)(2) is "to be used for a relatively narrow purpose" and is not intended "to be so broad to allow an amended pleading to add an entirely new claim based on a different set of facts." Farris v. U.S., 333 F.3d 1211, 1215 (11th Cir. 2003).

Petitioner's newly raised Ground Five asserts that a "fundamental error"[6] occurred because the jury used a general verdict form and the prosecution argued in closing, and the trial court gave an instruction for, first and third degree felony murder, as well as first degree premeditated murder. It is apparent that this claim is wholly unrelated to the other four Grounds raised in the Petition, is removed in time, and unquestionably raises a different type of claim than those advanced

---

[6] Instructing a jury on multiple theories of guilt, one of which is invalid, is not a structural error requiring that a conviction based on a general verdict be set aside on collateral review without regard to whether the flaw in the instructions prejudiced the defendant, but is subject to harmless error review in which the reviewing court should ask whether the flaw in the instructions had substantial and injurious effect or influence in determining the jury's verdict. Hedgpeth v. Pulido, ___ U.S. ___, 129 S.Ct.530, 532 (2008).

in the Petition.  In particular, Grounds One and Two are premised on counsel's effectiveness; Ground Three challenges the jury selection process; and, Ground Four challenges whether the prosecutor's statements during closing violated Petitioner's right to remain silent.  Consequently, the Court will dismiss Ground Five set forth in the Amendment to the Petition as time barred.  Because the Court finds Ground Five is time barred, the Court will deny Petitioner's Motion Requesting Record Expansion or Evidentiary Hearing and Motion for Appointment of Counsel in connection with Ground Five (Doc. #32) as moot.

**The Petition**[7]

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court for purposes of ruling on the four Grounds raised in the Petition.  Schriro v. Landrigan, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).  Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

---

[7]Petitioner attaches a copy of his Petition to the Amendment to Petition, which is identical to his original Petition. Consequently, the Court will cite to the original Petition.

The Court incorporates herein, by reference, the factual narrative set forth in the Initial Brief of Appellant ("Petitioner's Brief on Direct Appeal," Exh. 2), as conceded by State in its Answer Brief "as substantially correct." Exh. 3 at 1. The Court has reviewed the full appellate record, including the trial transcript and post-trial transcript, to the extent relevant. The Court will cite to pertinent portions of the record or transcripts, in assessing the claims raised in the Petition.

### Ground One

In Ground One, Petitioner asserts that he received ineffective assistance of counsel in violation of the Sixth Amendment when defense counsel rested without consulting petitioner regarding whether petitioner wanted to testify. Petition at 5. In support of this Ground, Petitioner claims that he would have testified that he had nothing to do with the murder and his cousin, Beto, framed him by planting the Petitioner's key chain with his children's pictures under the victim's body. Id. Respondent submits that this ground is procedurally barred to the extent that Petitioner faults counsel for "resting without consulting Petitioner." Supp. Response at 10.

The Court agrees that this Ground is procedurally barred. In neither his Rule 3.850 motion nor at his evidentiary hearing, did Petitioner assign fault to defense counsel in connection with his failure to consult with Petitioner as to whether he wished to testify before resting. Consequently, this new and expanded claim

is unexhausted, and now procedurally barred by Florida's Rule 3.850's two year statute of limitations. <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991); <u>Mize v. Hall</u>, 532 F.3d at 1190. Petitioner has not shown either cause excusing the default and actual prejudice resulting from the bar. Furthermore, Petitioner has not shown that he is entitled to the fundamental miscarriage of justice exception.

Alternatively, if not procedurally defaulted, the Court finds Petitioner's claim is without merit. In his Rule 3.850 motion, Trevino claimed that "defense counsel was ineffective by not allowing defendant to testify to the fact that the defendant had been framed by his cousin Beto Trevino, because they would lose the final opportunity to speak to the jury during closing argument." Exh. 6 at 040. Petitioner was granted an evidentiary hearing on the issue. In denying this claim, the postconviction court ruled as follows:

> In his fourth ground for relief, the Defendant claims his counsel was ineffective for advising him that if he testified at trial, the Defendant would forfeit his right to have the final opportunity to speak to the jury during closing argument. The Defendant alleges he was denied his constitutional right to testify by his attorney. At the evidentiary hearing held on February 27,2003, Stephen Grogoza, the Defendant's trial counsel, testified he spoke to the Defendant about testifying after the State had concluded its case. Mr. Grogoza claimed he told the Defendant he did not think the State had proven its case and felt there was no need for the Defendant to testify. Mr. Grogoza stated he ultimately left the decision to the Defendant and that he never told him not to testify. The Defendant testified at the evidentiary hearing that he told his counsel several times he wanted to testify but Mr. Grogoza made the choice that he would not.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish two elements: counsel's performance was deficient and the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668,687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Unless a defendant can make both showings, it cannot be said the conviction resulted from a breakdown in the adversary process that produced an unreliable result. <u>Id.</u>

The fundamental constitutional right of a defendant to testify in his behalf at trial is personal to the defendant and cannot be waived by the trial court or defense counsel. <u>United States v. Teague</u>, 953 F.2d 1525, 1532 (11th Cir. 1992). "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." <u>Id.</u> at 1533. In <u>Teague</u>, the appellant's trial counsel testified at an evidentiary hearing that after advising the client it would be unwise and unnecessary to testify, she rested the defense case, believing her client had assented or acceded to her recommendation. The Eleventh Circuit found her performance was not constitutionally deficient. <u>Id.</u>

The Second District Court of Appeal has held that an accused waives his right to testify if, after his attorney explains the right to him, he acquiesces in the attorney's advice not to testify. <u>Cutter v. State</u>, 460 So. 2d 538,539 (Fla. 2d DCA 1984). "If he does not agree with his attorney, he must make his objection known to the court during the trial, not as an afterthought." <u>Id.</u> In the present case there does not appear to be a waiver on the record of the Defendant waiving his right to testify. However, based on the testimony presented at the evidentiary hearing, this Court finds that the Defendant's trial counsel properly advised the Defendant as to whether he should testify and correctly left the ultimate decision to the Defendant. The Court finds there is insufficient evidence to show that the Defendant's trial counsel advised the Defendant that he would forfeit his right to speak last during closing arguments if he took the stand or that the Defendant relied on such information in making his decision not to testify.

For an attorney's performance to be constitutionally deficient, the errors must be so serious that counsel was

> not functioning as "counsel" guaranteed by the Sixth
> Amendment. <u>Strickland</u>, at 687, 104 S.Ct 2064. The Court
> finds that Mr. Grogoza's performance regarding the
> Defendant's right to testify was not deficient and this
> claim is therefore denied.

Exh. 6 at 171-172, ¶14. The appellate court affirmed the postconviction court's ruling. Thus, the State court decisions are entitled to deference.

Here, the trial court correctly recognized that the <u>Strickland</u> analysis governs Petitioner's ineffectiveness claim concerning Petitioner's right to testify. Additionally, the trial court found that counsel had consulted with Petitioner: "However, based on the testimony presented at the evidentiary hearing, this Court finds that the Defendant's trial counsel properly advised the Defendant as to whether he should testify and correctly left the ultimate decision to the Defendant." Thus, Petitioner cannot prevail on this claim unless he can show that the State court unreasonably applied <u>Strickland</u> or unreasonably determined the facts in light of the evidence presented in the state court proceedings. Petitioner has established neither.

At the evidentiary hearing, defense counsel denied Trevino's contention that Petitioner had advised counsel that he wanted to testify, or that he advised Trevino that it was not in his best interest to testify:

> Q: Okay. And during the course of this conversation did
> you advise him that it was probably in his best interest
> not to testify?

A:  Well, that's not how I remember it. Danny all along
had been saying he didn't want to testify. He had been
saying that Beto was a member of the Mexican Mafia.  That
- -

THE COURT:  Who was?

THE WITNESS:  That the his cousin, Beto, the one who
actually committed the murder.  And that after the murder
had occurred Beto went to Danny and said you know you're
now a member of the MM, and Danny said that his family
had been threatened that if Danny ever testified that Beto would kill his family, or possibly kill Danny.
And I -- all -- I mean, this was from the very beginning, the first
time I met Danny in the jail and he was saying he just wasn't going
to testify.  When we had the trial after the State closed or
finished --yeah, closed, I went back and talked to Danny about it.
I said, "Okay, it's either now or never, what do you want to do?"
And it came up to what has the state proven?  And I said to him, "I
don't think the State's proven anything, except that you were
there."  As a matter of fact, the State was even saying that Danny
didn't commit the murder, that it was his cousin Beto.  I never
told Danny that if you -- if he testified we would lose first and
last, because that's not true, the defendant can always testify.
And that -- that's the first thing you learn when you do criminal
law, that a defendant can testify and you still do first and last
and closing.  So I absolutely never told Danny that.  My
recollection of our conversation, as a matter of fact it was in the
back room over here, was that it was up to Danny if he wanted to
testify.  I told him that if he didn't want to testify under these
circumstances that was his decision, I could understand it but that
the jury just wouldn't get his point of view.  The question came
down to did the State prove the case that Danny was involved in the
murder and I said that since the State's agreeing that Beto did the
murder, there may really not even be an issue that you were
involved in this.  So it's really up to the jury; now if you want
to convince the jury of that, that's fine.  And that was,
basically, our conversation, but I never told him not to testify.
As a matter of fact I -- I think all along I had been telling
Danny, I said, you know, you're going to have to tell the jury your
side of the story.  That you say I'm not --you know, Beto said he
was a member of the MM, now I'm a member of the MM, the Mexican
Mafia, that's the MM, and I'm just not going to testify.  And from
my --from what I remember talking to Danny, that's how the
conversation ended and he just didn't want to testify.  It was not
me making any recommendation to him one way or the other.

Q:  So the decision then was his?

A: Yes. What I was saying - I told him at this point I
understand. If he did not want to testify because I
didn't think the State had proven their case

Q: I understand.

A: But it was still absolutely up to him if he wanted to
testify, or if he did not want to testify, or if he
wanted to keep his position.

Exh. Transcript of Record on Appeal, Additional Volume II (Evid.

Hrg.) at 10-12. At the evidentiary hearing, Trevino offered a

different version of the events on cross examination, but

nonetheless conceded that counsel had consulted with him:

Q: Was it your choice not to testify?

A: Well, basically when the State –

Q: That --just -- you can explain, yes or no?

A: No.

Q: And who made that choice for you then?

A: My attorney did.

Q: All right. And what did he tell you?

A: Well, like -- when the State rested, we went back to
the room and it was Mr. Joe Torres, Mr. Steve Grogoza and
John McGowan, they kept saying that the State didn't put
no physical evidence whatsoever to convict me of first
degree murder. And to my point -- my part of going
through my trial was basically not what they had put,
it's basically that nobody knew exactly what happened out
there that night. There was three of us out there that
night. And to this time and in the five days of my
trial, the State, my lawyer or everybody in the courtroom
did not find out what happened out there. I could have
cleared a lot of assumptions that they used to convict me
of first degree murder.

Q: Did you tell them that you wanted to testify?

A: Oh, yes, I told them two or three times. As a matter of fact, Joe Torres intervened when we were back in that room saying to listen to Mr. Grogoza, that he, knew what he was doing, he said that we will lose the final opportunity to speak. Again, I didn't know who speak -- you know, who will have the last argument, but now, I did know. Or basically it came down to -- I kept saying to them, but they're seeking the death penalty and I still want to testify, basically, to clarify on my side what happened that night.

Q: Well, in your motion you indicated it was Mr. Grogoza who said you were going to lose that first and last?

A: Right.

Q: Now --you just said it was Mr. Torres who said that.

A: No, Mr. Torres said to listen to him, that they didn't put no physical evidence on to convict me on first degree.

Id. at 59-61. Thus, even Petitioner's testimony refutes his current claim that counsel did not consult with him about testifying.[8]

Additionally, Petitioner has not demonstrated "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Instead, Petitioner at most speculates as to what verdict the jury would have rendered if he had indeed testified. Petitioner would have been subject to strenuous cross-examination

---

[8]The court's credibility determination is accorded deference under § 2254(d)(2), and will be presumed correct, unless Petitioner shows by clear and convincing evidence that the court's conclusions regarding the credibility of the witnesses was unreasonable in light of the evidence presented in the State court proceeding. Rice v. Collins, 546 U.S. 333, 338-39 (2006). Petitioner has not shown by any evidence, much less clear and convincing evidence, that the court's determination concerning Mr. Grogoza's credibility was unreasonable.

and would have had to explain the inconsistencies in the "different statements" he had given to the police. Speculation is insufficient to demonstrate prejudice. <u>Harris v. Crosby</u>, 151 Fed. Appx. 736, 738 (11th Cir. 2005).

Having thoroughly considered the record, including the transcript from the evidentiary hearing, and the applicable law, the Court finds that the state court's denial of Petitioner's ineffective assistance of counsel claim is not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Based upon the foregoing, the Court will dismiss Ground One of the Petition with prejudice, and alternatively, deny Ground One as without merit.

**Ground Two**

In his second Ground for relief, Petitioner faults defense counsel for failing to have Trevino's key chain analyzed for fingerprints, and failing to have blood evidence from the victim, the victim's car, and Trevino's car analyzed for exculpatory DNA evidence. Petition at 7. Petitioner claims that this evidence would have supported the defense's theory that his cousin, Beto, killed the victim and framed Petitioner by planting his key ring under the body. <u>Id.</u> Petitioner argues that the absence of his blood would have "negated the possibility that Petitioner was in

close mortal combat with the victim while he was being beaten to death." Id. at 9. Respondent submits that Petitioner fails to overcome the presumption of correctness as required by 28 U.S.C. § 2254(e)(1). Supp. Response at 24.

Petitioner raised the issue of counsel's ineffectiveness for failing to have the key chain tested as ground nine in Rule 3.850 motion, and counsel's ineffectiveness for failing to have the blood evidence tested for Petitioner's DNA as ground thirteen in his amended Rule 3.850 motion. Petitioner was granted an evidentiary hearing on both issues. With respect to ths issue involving the key chain, the postconviction court ruled as follows:

> In his ninth ground for relief, the Defendant claims his trial counsel was ineffective for failing to have the key chain found under the victim's body analyzed by an expert to determine whether fingerprint evidence could be obtained from the item. At the evidentiary hearing, the Defendant's trial counsel, Mr. Grogoza, testified that based on the version of events the Defendant had told him, he decided that having the key chain analyzed could only have hurt his case. Mr. Grogoza's entire defense strategy was built upon two factors: the State had pointed to Beto as the actual killer and the Defendant had made statements to law enforcement in which he admitted to being present at the crime scene.
>
> The Defendant's trial counsel is entitled to a strong presumption that his conduct was reasonable and sound trial strategy. Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2066, 80 L. Ed. 2d 674 (1984). When an attorney had developed a potential defense based on facts known to counsel because of what his client has said, "the need for further investigation may be considerably diminished or eliminated altogether." Id. at 691, 104 S. Ct. at 2066. In Gudinas v. State, 816 So. 2d 1095, 1102 (Fla. 2002), the defense attorney testified he did not pursue DNA testing of certain evidence because he felt it was "a double-edged sword" and he did not want to produce any more incriminating evidence against his

client. He testified he felt is was not even worth the risk to attempt a confidential analysis of the evidence. Id. The Florida Supreme Court held that the defense attorney's actions were reasonable, strategic decisions that did not constitute ineffective assistance. Id.

In Williams v. Kemp, 846 F.2d 1276 (11th Cir. 1988), the petitioner claimed his trial counsel was ineffective for failing to hire expert witnesses to challenge testimony presented by prosecution witnesses about blood stains on the petitioner's boots. The Eleventh Circuit held it was a reasonable tactical decision not to use a defense expert because the petitioner had made a statement to the police admitting he was present while the victim was killed. Id. at 1280-81. The whole strategy centered around a defense of the petitioner's actions to make it consistent with the earlier statement he had made. Id. at 1281.

In the present case the Defendant's trial counsel made a conscious decision to build his defense strategy on the fact the Defendant had admitted to being at the crime scene and the fact the State had pointed to his cousin, Beto, as the actual killer. His choice to not disrupt that defense with possible inculpatory evidence from testing of the key chain was a deliberate tactical decision that this Court finds to be reasonable under the circumstances. "Judicial scrutiny of an attorney's performance is highly deferential, and appellate courts must not attempt to second guess strategic decisions." Williams at 1280. Instead, the reasonableness of an attorney's conduct must be evaluated "in light of the then existing circumstances." Id. In the present case, the Defendant's counsel had little to gain from testing the key chain for fingerprints and his decision to not retain an expert for that purpose was not deficient under Strickland.

Even if this Court had found counsel's conduct to be deficient, the Defendant has failed to establish that he was prejudiced as a result of counsel's decision. In the present case the Defendant made several statements introduced by the State at trial. They all differed except for one constant: the Defendant admitted to being at the crime scene when the victim was killed. Therefore, his presence at the murder scene was established without use of his key chain. The Defendant has not established by a reasonable probability the verdict in this case would have been different had

defense counsel retained an expert to test the key chain
for fingerprints.  Because the Defendant has failed to
prove either component of the <u>Strickland</u> test with regard
to this claim, the Court denies this ground for relief.

Exh. 6 at 172-174 at ¶15.  In denying Petitioner's claim concerning

defense counsel's failure to test the blood evidence for the

presence of Petitioner's DNA, the postconviction court concluded as

follows:

> In his thirteenth proposition of error, the Defendant
> claims his counsel was ineffective for failing to have
> blood evidence recovered from the victim, the victim's
> car and the Defendant's car analyzed for exculpatory DNA
> evidence.  The Defendant claims his trial counsel should
> have conducted testing because there was evidence of a
> struggle at the crime scene and the Defendant's cousin,
> Beto, had shown signs of injuries after the murder.  The
> Defendant contends this should have suggested to his
> counsel a reasonable likelihood that Beto's blood would
> be present at the crime scene.
>
> The Defendant claims there was no downside risk to
> conducting DNA testing on the blood samples. He further
> alleges that "law enforcement was already of the belief
> that Beto had actually committed the murder," and there
> was a lack of physical evidence to support a conviction
> for first degree murder.
>
> Mr. Grogoza testified at the evidentiary hearing that he
> decided testing of the blood evidence was unnecessary
> because the State was pointing to Beto as the actual
> killer.  Mr. Grogoza did not pursue testing of the blood
> evidence because he felt there was nothing to gain from
> tests which could have yielded inculpatory evidence
> against his client.  The Court finds that Mr. Grogoza's
> decision was reasonable under the circumstances.  Testing
> of the blood evidence could have further inculpated the
> Defendant in the crime, thereby destroying Mr. Grogoza'
> s defense strategy.
>
> The Defendant claims that test results of blood found
> underneath the victim's fingernails excluded the
> Defendant as a source and the jury's verdict would have
> been different had they heard this evidence.  However,
> the Defendant's presence at the crime scene was established by his

statements to law enforcement.  The fact that Beto and the victim may have struggled does not affect the Defendant's culpability in this case.  The Defendant has not shown a reasonable probability the verdict in the trial would have been different but for counsel's failure to test the blood evidence.  Because the Defendant has failed to meet either prong of the <u>Strickland</u> test, the Court denies this claim.

<u>Id.</u> at 174, ¶16.  Here, trial court determined that counsel's decision not to conduct testing on this evidence was a clearly a matter of defense counsel's trial strategy and is presumed to be correct.  <u>See</u> <u>Fotopoulos v. Sec'y, Dep't of Corr.</u>, 516 F.3d 1229, 1233 (11th Cir.2008) (noting that the federal court gives a presumption of correctness to the state court's factual determination whether counsel's actions were the product of a tactical or strategic decision), <u>cert. denied</u>, ___ U.S. ___, 129 S. Ct. 217, 172 L. Ed. 2d 171 (2008).  The Court does not find that the state court's decision on these issues were objectively unreasonable.  The state court correctly identified <u>Strickland</u> as the governing legal authority and reviewed counsel's reasonableness at the time of trial, without the benefit of the DNA testing.  In analyzing an ineffective assistance claim, the Eleventh Circuit emphasized that the courts "should always avoid second guessing with the benefit of hindsight.  <u>Strickland</u> encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy.  We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately."  <u>White v.</u>

<u>Singletary</u>, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).

In judging whether trial counsel acted reasonably, the courts typically rely on two sources: petitioner's own testimony as to substance of the conversations that took place between petitioner and counsel concerning the pretrial investigation of the case and trial strategy, and defense counsel's own explanation as to what took place. <u>See</u> <u>Chandler v. U.S.</u>, 218 F.3d 1305, 1318-19 (en banc) ("[An] inquiry into counsel's conversations with the [petitioner] may be critical."); <u>see</u> <u>Rompilla v. Beard</u>, 545 U.S. 374, 385, 125 S.Ct. 2456, 2464 (2005)(recounting the testimony of trial counsel during post-conviction proceedings); <u>Wiggins v. Smith</u>, 539 U.S. 510, 517 (2003)(same). Further, counsel "need not always investigate before pursuing or not pursuing a line of defense." <u>Chandler</u> at 1318. "By its nature, 'strategy' can include a decision not to investigate ... [and] a lawyer can make a reasonable decision that no matter what an investigation might produce, he wants to steer clear of a certain course." <u>Rogers v. Zant</u>, 13 F.3d 384, 387 (11th Cir. 1994).

Based upon the record, it is clear that counsel was concerned that testing of the evidence could result in inculpatory, as opposed to exculpatory, evidence. Counsel clearly decided, given the fact that the State was conceding that Petitioner did not do the actual killing, that it was better to "let sleeping dogs lie." Thus, there is nothing in the record and Petitioner does not

demonstrate that counsel's decision not to investigate and test any of the items was unreasonable.

After thoroughly considering the record, including the transcript from the evidentiary hearing, and the applicable law, the Court finds that the state court's denial of Petitioner's ineffective assistance of counsel claim concerning his failure to test the key ring and other blood evidence is not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Consequently, the Court will deny Ground Two of the Petition as without merit.

### Ground Three

Petitioner claims that the trial court's exclusion of death-scrupled jurors violated his Sixth and Fourteenth Amendment Rights. Petition at 11. Petitioner states that prior to *voir dire*, defense counsel sought a judicial determination that pursuant to Edmund v. Florida, 458 U.S. 782 (1982), death was not an appropriate sentence as a matter of law. Id. It was not until after Petitioner had been convicted of First Degree Murder that the trial court ruled, as a matter of law, that Petitioner had to be sentenced to life imprisonment. Id. Petitioner argues that six prospective jurors were stricken for cause upon motion of the prosecution due to their opposition to the death penalty. Id. at 12. Petitioner asserts

that the trial court's error in striking these jurors deprived him of his Sixth and Fourteenth Amendment rights to a fair trial and fair and impartial jury in violation of <u>Gray v. Mississippi</u>, 481 U.S. 648 (1987), and <u>Davis v. Georgia</u>, 429 U.S. 122 (1976).  <u>Id.</u>  The Court finds that this issue is deemed exhausted to the extent it is raised in Petitioner's direct appeal.  <u>See</u> <u>generally</u> Exh. 2 at 21-23.  Respondent contends that based upon controlling Supreme Court precedent, Petitioner was not deprived of a fair trial by an impartial jury.  Supp. Response at 29.

The record reflects that the defense, on the evening before trial, filed a motion to determine the State's good faith pursuit of the death penalty and to bar State from death qualifying the jury.  Trial Transcript at 64.  The State identified a number of aggravating factor, including that the crime was "heinous, atrocious and cruel in nature."  <u>Id.</u> at 65.  Additionally, the State submitted that the crime was committed for "pecuniary gain." <u>Id.</u>  As aggravating factors, the State listed the following:  the crime was "cold, calculated and premeditated," Petitioner had a previous felony, and was on probation at the time of the crime. <u>Id.</u>  The State could not identify any mitigating factors.  <u>Id.</u> at 66.  The trial court denied the defense's motion finding that the State had met their burden.  <u>Id.</u> at 67.  Consequently, the court permitted the jury to be death-qualified.  <u>Id.</u> at 69.  On October 6, 1997, at the conclusion of the guilt phase, the trial court

entered the following written order regarding the application of

the death penalty in the instant action:

THIS CAUSE, having come before the Court on Defendant's Motion to Bar State From Pursuing Death Penalty and the Court having been fully advised in the premis[e] finds:

1. The Defendant, Daniel Trevino, having been found guilty of First Degree Murder in the State of Florida may be sentenced to either life in prison without parole or to the death penalty. However, the law of Florida as well as the case law of the United States Supreme Court lays out three categories of prohibition in which a defendant may not be sentenced to the death penalty.

2. The first two categories of prohibition concerning the age of the Defendant and the lack of any aggravating factors do no apply in the instant case concerning either the imposition of the death penalty or the necessity for penalty phase proceedings. <u>Alien v State</u>, 636 So.2d 494(Fla. 1994) and <u>Banda v State</u>, 536 So.2d 221(Fla. 1988).

3. The third category of prohibition is the <u>Enmund/Tison</u> exclusion, which states the Eighth Amendment does not permit the imposition of the death penalty on a defendant who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place, or that lethal force be employed. <u>Enmund v. Florida</u>, 458 U.S. 782 (1982). <u>Tison v. Arizona</u>, 481 U.S.137(1987) says that major participation in a felony that resulted in murder, even if the defendant is not the killer, combined with the defendant's reckless indifference to human life is sufficient to satisfy the <u>Enmund</u> culpability requirement. In <u>Jackson v. Florida</u>, 575 So.2d 181 (1991) the defendant argued that the death penalty was disproportional punishment as applied to this case under <u>Tison v. Arizona</u>, 481 U.S. 137 (1987) and <u>Enmund v. Florida</u>, 458 U.S. 782 (1982). The Court in <u>Jackson v Florida</u> held that there was no evidence to show the defendant personally possessed or fired the gun, and that there was no evidence that he intended to harm anybody before he walked into the store, which eventually robbed. The Court found insufficient evidence to establish that the defendant's state of mind was

culpable enough to rise to the level of reckless indifference to human life. The Florida Supreme Court stated that <u>Enmund</u> and <u>Tison</u> are not satisfied in the murder case where there are multiple defendants, no eyewitnesses, and all the evidence is circumstantial, and the actual killer is not clearly identified. <u>Jackson v. Florida</u>, 575 So.2d 181 (1991).

4. In the case at hand, Daniel Trevino and his co-Defendant, Roberto [Beto] Trevino, were both arrested for the murder of Michael Lovett. Daniel Trevino was originally arrested on the charge of accessory after the fact to first degree murder and was subsequently charged with and convicted of first degree murder. The evidence revealed that Investigator Daniel Anderson's probable cause affidavit for the arrest of Roberto Trevino states that Roberto Trevino did commit the felony of first degree murder and that this murder was perpetrated from a premeditated design. However, Roberto Trevino was subsequently charged with second degree murder, although it appears from Investigator Anderson's probable cause affidavit that the police investigators concluded that he was the one who actually fired the weapon. Defendant Roberto Trevino's charge has been *nolle prossed*. The investigation of the Collier County Sheriff's Department as evidenced by the probable cause affidavit viewed both defendants as equally culpable.

<u>State v. Daniel Trevino</u> is a circumstantial evidence case, with more than one defendant, and the actual killer is not clearly identified. There is insufficient evidence to show that Daniel Trevino was the actual killer of Michael Lovett. The circumstantial evidence could equally sustain the conclusion that Daniel Trevino was aiding and abetting a felony in the course of which a murder was committed by others but he himself did not kill, attempt to kill, or intend that a killing take place, or that lethal force be employed. Without sufficient evidence to establish that Daniel Trevino was the actual killer, there is insufficient evidence to establish that Daniel Trevino's state of mind was culpable enough to rise to the level of reckless indifference to human life necessary to make Daniel Trevino eligible for the death penalty. The Supreme Court has stated the <u>Enmund/Tison</u> decision can be made by

> a trial judge. <u>Cabana v. Bullock</u>, 474 U.S. 376 (1986).[9]
> The Court is satisfied that the <u>Enmund/Tison</u> culpability
> requirement cannot be met in this case, and since the
> Defendant may not be sentenced to the death penalty, the
> Defendant, Daniel Trevino, must be sentenced to life
> imprisonment without parole and consequently there is no
> necessity for penalty phase proceedings.

Exh. 1 at 189-191.  On direct appeal, Petitioner argued that the trial court's failure to determine that death was not an appropriate sentence "as a matter of law" prior to the guilt phase precluded at least five jurors, who Petitioner concedes "were not qualified to render a sentencing recommendation" if death was a viable penalty, from deciding Petitioner's guilt or innocence. Exh. 2 at 22-23.  Petitioner asserts that the "unnecessary exclusion of these individuals created a windfall[10] to the prosecution."  <u>Id.</u> at 23.  As such, Petitioner contends that the trial court's decision to death-qualify the jury cannot be deemed harmless error.  <u>Id.</u>

In its appellate reply brief, the State argues that "the fact that the trial court ultimately disagreed with the State's position after the close of the evidence does not render the trial court's pre-trial ruling infirm."  Exh. 3 at 2.  Instead, the State contends that the issue for the appellate court is whether "the

_____

[9]<u>Abrogated</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Pope v. Illinois</u>, 481 U.S. 497 (1987).

[10]Petitioner submits that it is "commonly perceived, if not officially acknowledged that a death qualified jury is more likely to convict."  Exh. 2 at 22.

State had a sufficient factual basis for its assertion that death was an available penalty." Id. at 5. In recapping the State's evidence, the State argues that there was "ample proof of [Trevino] being involved as a major participant in the murder." Id. at 9 citing Edmund v. Florida, 458 U.S. 782 (1982) and Tison v. Arizona, 481 U.S. 137 (1987). The appellant court affirmed Petitioner's conviction and sentence without opinion. Exh. 4.

Petitioner does not suggest that the striking for cause of the six jurors was in violation of Wainwright v. Witt, 469 U.S. 412, 424 (1985). In fact, Petitioner concedes that these stricken jurors "were not qualified to render a sentencing recommendation" if the death penalty was applicable. Exh. 2 at 22-23. Rather, Petitioner suggests that jurors cannot be death-qualified unless the death penalty remains a viable penalty upon completion of the guilt phase.

The Court finds Petitioner's argument without merit. The Sixth Amendment to the Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." Constitutional challenges to the use of death-qualified juries in the guilt portions of trials, even when a death sentence is ultimately found to be unavailable, "have been soundly and repeatedly rejected." U.S. v. Brown, 441 F.3d 1330, 1354 (11th Cir. 2006)(citing Lockhart

v. McCree, 476 U.S. 162, 176-84 (1986); U.S. v. Williams, 400 F.3d 277, 281 (11th Cir. 2005)).  See also Buchanan v. Kentucky, 483 U.S. 402, 414 (1987); U.S. v. Waldon, 363 F.3d 1103, 1111-1112 (11th Cir. 2004).

Having carefully considered the record, including the trial transcript, and hearings on the pretrial motions, and the applicable law, the Court finds that the state court's denial of this claim is not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  28 U.S.C. § 2254(d).  Consequently, the Court will deny Ground Three of the Petition as without merit.

**Ground Four**

In Petitioner's final claim for relief, he argues that the prosecutor's comments during closing argument violated his Fifth Amendment right to remain silent and shifted the burden of proof to the defense, thereby violating Petitioner's right to a fair trial and due process in violation of the Sixth and Fourteenth Amendments. Petition at 13.  Petitioner states that twice during closing argument the prosecutor held up the key chain with the pictures of Petitioner's children on it and asked "how is the he going to explain this?"  Id.  Petitioner points out that defense counsel objected and moved for a mistrial based on the comment.

_Id._  The trial court sustained the objection, but denied the motion for a mistrial.  _Id._ at 14.  Petitioner claims that the prosecutor's comments and denial by the trial court of his motion for a mistrial denied him a fair trial and due process of law.  _Id._ Respondent submits that, in his direct appeal, Petitioner claimed that the prosecutor improperly commented on his right to remain silent, which improperly shifted the burden of proof, but did "not assert a violation of his Fifth Amendment right to due process resulted from the denial of his mistrial motion."  Supp. Response at 33-34.  Thus, Respondent submits that any federal due process argument is thus procedurally barred.  _Id._ at 34.

Petitioner raised similar claims on direct appeal and in his Rule 3.850 motion.[11]  On direct appeal, Petitioner presented the following issue:

> The trial court erred by failing to grant appellant's motion for mistrial after the prosecutor commented on the appellant's right to remain silent and shifted the burdens of going forward and of proof during closing argument.

Exh. 2 at 2.  In support of this claim, Petitioner acknowledged that:

> the trial court immediately recognized such a burden-shifting comment on the Appellant's right to remain silent to be "clearly  . . . improper," a timely motion for mistrial made by the Appellant was denied (T 722-

---

[11]The trial court rejected the claim in Petitioner's Rule 3.850 motion (ground two) finding that the claim "should have been raised on direct appeal."  Exh. 6 at 169, ¶6.

724). As will be discussed in greater detail below, this
was reversible error, as **no** curative instruction could
have eviscerated the harm done to Appellant's rights
under the facts presented.

Id. at 24 (emphasis in original). In support of his argument that

the burden was shifted and the error could not be deemed harmless,

Petitioner cited to the Florida Supreme Court's opinion in Jackson

v. State, 575 So. 2d 181, 188 (Fla. 1991), and the Florida

appellant court's decision in Barry v. State, 504 So. 2d 524 (Fla.

5th DCA 1987). The Florida Supreme Court in Jackson, in analyzing

the prosecutor's comments there to the jury, observed that:

It is well settled that due process requires the state to
prove every element of a crime beyond a reasonable doubt,
and that a defendant has no obligation to present
witnesses. Accordingly, the state cannot comment on a
defendant's failure to produce evidence to refute an
element of the crime, because doing so could erroneously
lead the jury to believe that the defendant carried the
burden of introducing evidence.

575 So. 2d at 188. The Jackson court further recognized that "the

same problem may also implicate a defendant's constitutional

privilege against compelled self-incrimination." Id. at n.4.

Similarly, in Barry v. State, the appellate court recognized that

the Florida Supreme Court had expressly adopted the harmless error

rule laid down by the United States Supreme Court in Chapman v.

California, 386 U.S. 18 (1967). Barry, 504 So. 2d at 525.

The Court finds that Petitioner did "fairly present" the

constitutional dimensions of this Ground to the State court. Thus,

the Court rejects the procedural default argument and will address this Ground on the merits.

The defense argued strenuously during its closing that Petitioner did not participate in the killing of the victim, Mike Lovatt.  Trial Transcript at 689-709.  Counsel methodically went through the State's evidence and claimed that there was no direct evidence to connect Petitioner to the killing and, in fact, suggested that a reasonable inference could be made that the Petitioner may have intervened to assist the victim to get away from Beto, the actual killer.  Id. at 701-702.  Thereafter, the prosecutor in summarizing the evidence presented by the State commented as follows:

> Another thing [the victim's wife] did, and I showed her -- and it's strange that the Defense forgot to mention this at all.  He was talking about Jeanie Lovatt.  I showed her that picture on the key chain and she recognized those children.  Isn't it strange how the Defense has not mentioned that very significant fact that the key chain was found underneath the body of Michael Lovatt.

Trial Transcript at 713.

> . . .

> Significantly, Sergeant Browning was the person, after they had taken the body away, he looked at the sand where Mike Lovatt had been laying in the roadway.  He dug around.  He saw something in the sand that was there, he took a picture of it.

> See, that picture he saw in the sand that was underneath Michael Lovatt, what he saw in the sand, he said he dug it out of the sand underneath Mike's body was this.  *If Defendant didn't participate in killing Lovatt, how is he*

*going to explain this?  How is he going to explain the
fact that this was underneath the body*?

Id. at 721-722 (emphasis added).  Defense counsel asked the court

for a side bar, objected to the prosecutor's comments, and moved

for a mistrial on the basis that:

> the State has totally changed the perspective on this
> case and said the Defendant has to put on evidence to
> prove the case.  How does Defendant explain that?  We
> don't have to explain anything.  They just put the burden
> on the Defense to prove something.

Id. at 722.  In response, the prosecutor replied that he believed

that the wording was "how would he explain that."  Id.  The

prosecutor insisted that he said "how is it explained?"  The

prosecutor stressed, that he "didn't mention the Defendant at all."

Id.  The trial court excused the jury and asked the reporter to

read back the comment.  Id. at 722-724.  After rehearing the

comment the trial court ruled as follows:

> THE COURT: I deny the Defense motion for mistrial;
> however, I'll give a cautionary instruction to the jury.
> It appears from the conduct of the entire trial, the
> emphasis that's been placed upon the burden of proof of
> the Defendant, and the presumption of innocence, the
> burden upon the State to prove the Defendant's guilt
> beyond a reasonable doubt, that such a statement can only
> be a misstatement, not conduct in trying to shift a
> burden. I think it's necessary at this point to remind
> the jury that the Defendant is not required to prove how
> the key chain got there.
>
> MR. ZACHARY: I agree.
>
> THE COURT: Is that satisfactory?

> MR. GROGOZA: Well, I'll accept it, Judge. I would still
> -- I think a mistrial is proper. I don't want to waive a
> mistrial.

Id. at 724.  After the jury returned, the trial court offered the

following curative instruction prior to the State concluding its

closing:

> THE COURT: Members of the jury, at this time I would like
> to give you a brief instruction and then we will proceed.
> The Defendant, Danny Trevino, is not required to prove
> how State's Exhibit Number Two, the key chain, got to the
> location where it was discovered. The State must prove
> the relevance of the key chain to the crime charged
> beyond a reasonable doubt.  The Defendant does not have
> to prove anything.  The State may proceed.

Id. at 727.


A prosecutor's statement violates the defendant's right to

remain silent if either: (1) the statement was manifestly intended

to be a comment on the defendant's failure to testify; or (2) the

statement was of such a character that a jury would naturally and

necessarily take it to be a comment on the failure of the accused

to testify.  The question is not whether the jury possibly or even

probably would view the remark in this matter, but whether the jury

necessarily would have done so.  United States v. Blakenship, 382

F.3d 1110, 1128 (11th Cir. 2004) (citing United States v. Knowles,

55 F.3d 1146, 1162-1163 (11th Cir. 1995)). "The defendant has the

burden of establishing that one of the two criteria exists." U.S.

v. Reyes, 284 Fed. Appx. 785 *3 (11th Cir. July 9, 2008)(citing

Knowles, 66 F.3d at 1163).  The court will not find that a

prosecutor manifestly intended to comment on a defendant's failure to testify if some other explanation for the prosecutor's remarks is equally plausible." Id. (citing <u>United States v. Chirinos</u>, 112 F.3d 1089, 1099 (11th Cir.1995)). If a neutral explanation for the prosecutor's remarks exists, then there was no manifest intent. <u>Id.</u>

Here, the trial court determined that the comment made by the prosecutor was a "misstatement." Trial Transcript at 724. Essentially, the court concluded that the prosecutor unintentionally framed his question improperly. While the prosecutor's comment does not reflect prosecutorial proficiency, the Court does not construe it as an improper comment on Petitioner's silence. In fact, the Court finds it plausible that the "he" referred to defense counsel and not to the Defendant. In particular, immediately before the prosecutor's comment, defense counsel had engaged in a detailed review of the evidence pointing out that there was no direct evidence linking his client to the murder of Mike Lovatt. Thus, the Court finds that the jury did not necessarily view the remark as a comment on the Defendant's failure to testify. <u>Blakenship</u> 382 F.3d at 1182.

Even conceding, arguendo, that the comment was improper, prosecutorial argument does not constitute reversible error unless such argument renders the trial so fundamentally unfair as to amount to a denial of due process, or unless the statement so

prejudices another specific constitutional right, such as the privilege against self-incrimination, as to amount to denial of that specific right. <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643-645 (1974). As reiterated by the Eleventh Circuit:

> To find prosecutorial misconduct, a two-element test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant. A defendant's substantial rights are prejudicially affected when a reasonable probability arises that, but for the remarks, the outcome [of the trial] would be different. The court makes this determination in the context of the entire trial and in light of any curative instruction.

<u>United States v. Wilson</u>, 149 F.3d 1298, 1301 (11th Cir.1998) (internal quotations and citations omitted). In determining whether improper argument rises to this level, "we must ask whether there is a 'reasonable probability' that, but for the prosecutor's offending remarks, the outcome of the [guilt or] sentencing [proceeding] would have been different." "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Kennedy v. Dugger</u>, 933 F.2d 905, 914 (11th Cir.1991)(citation omitted).

Here, the trial court gave the jury a curative instruction upon their return to the courtroom prior to the conclusion of the State's closing and the defense's rebuttal. The trial court again charged the jury that the State bore the burden of proof on each element and that Defendant had a fundamental right not to be a

witness on is own behalf, and provided the jury with twelve sets of the written instructions. Trial Transcript at 768-795. "A jury is presumed to follow its instructions." <u>Weeks v. Angelone</u>, 528 U.S. 225, 234 (2000). Based upon the totality of the circumstances, including the strength of the State's evidence, in particular, the fact that the Petitioner admitted to being at the scene at the time of the murder, the comments at worst were not more than harmless error.

Thus, the Court finds that the State court's rejection of this Ground is not in conflict with clearly established federal law or based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. Thus, the Court will deny Ground Four of the Petition.

Therefore, it is now

**ORDERED and ADJUDGED:**

1.    The Amendment to Petition (Docs. #30) is **DISMISSED as time barred**.

2.    Petitioner's Motion for Record Expansion (Doc. #32) is **DENIED as moot.**

3.    The Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** as to Grounds One, Two, Three and Four, and Ground One is alternatively **DISMISSED** as procedurally defaulted.

4.   The Clerk of the Court shall enter judgment accordingly, terminate any pending motions; and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this ___26th___ day of March, 2009.

_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record